## McILHINNY v. VILLAGE OF TRENTON.

MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—IMPROPER USE—INJUNCTION—ABUTTING OWNERS.
    The erection of an electric lighting plant by a village within the limits of a public street is an improper use of the street, and at the instance of the abutting owners will be enjoined.

Appeal from Wayne; Hosmer, J. Submitted April 3, 1907. (Docket No. 5.) Decided May 18, 1907.

Bill by Mary P. McIlhinny against the village of Trenton to enjoin the erection of a building in a street, and to abate a nuisance. From a decree granting insufficient relief, complainant appeals. Reversed, and decree entered.

*Lodge, Trevor & Brown,* for complainant.

*Dickinson, Stevenson, Cullen, Warren & Butzel* (*Charles W. Casgrain* and *Joseph S. McDowell,* of counsel), for defendant.

Moore, J.   Appellant is the owner of a residence property situated on the northeast corner of Front street and St. Joseph avenue, in the village of Trenton.

The dedication clause in the plat contained the following language:

"To vest the fee of such parcels of land as are herein named, or intended to be for public uses, in said county, in trust, and for the purposes and uses therein named, expressed or intended, and for no other use or purpose whatever."

Complainant is the owner of lots 97, 98, 119, 120, situated on the northeast corner of Front street and St. Joseph avenue, her property having a frontage of 132 feet on Front street and running back parallel with and alongside of St. Joseph avenue to the channel bank of the Detroit river, a distance of from 350 to 500 feet.

On or about May 22, 1896, the village council and water commissioners caused to be erected in the center of St. Joseph avenue, east of Front street, and between 100 and 150 feet from the channel bank of the river, a building 30 feet wide east and west, by 32 feet long north and south, which has since been used for a pumping station in connection with the village waterworks.   No legal proceedings were taken by complainant, or in her behalf, to restrain or enjoin the erection of this plant.   Since the erection and operation of this pumping station complainant and other residents in that neighborhood claim to have suffered great inconvenience and annoyance from the large volumes of smoke and soot emitted from its smokestack, and the noises of a large steam whistle blown each day.   On the 12th of November, 1902, the defendant awarded a contract for the erection of, and afterwards proceeded to erect, a frame building with a stone foundation (a dupli-

cate of the then existing pumping station) in St. Joseph avenue, immediately adjoining the pumping station on the north, and between the pumping station and complainant's property. This building, when completed, was to be 12 feet high, 32 feet long north and south, and 30 feet east and west, parallel with complainant's lot line, and leaving between $\frac{1}{2}$ to $2\frac{1}{2}$ feet between the building and complainant's south fence. This building was to be used for the installation and operation of an electric lighting plant.

Complainant thereupon filed her bill of complaint to enjoin such proposed erection, claiming that the village had no right to use the street in such a manner, and praying that defendant be compelled to remove, not only that portion of the new structure which had already been put in, but also the pumping station.

The trial court held that, although the pumping station might have been regarded as a nuisance in its inception, and if application had been made in due season to enjoin it he would have enjoined the original erection, nevertheless the complainant, having allowed so long a time to elapse, is not entitled to an injunction entirely prohibiting the erection of the building. He ordered the smoke and noise nuisance to be abated; and, while he enjoined the erection of the building next to complainant's property where it was originally proposed to build it, he permitted it to be erected on the eastern, or river, side of the pumping station, still occupying as great an additional part of the street as first planned.

The case is brought here by appeal. Counsel do not ask to have the decree refusing to enjoin the village from operating its pumping station reversed, but ask this court to grant an injunction against the new obstruction in the street.

The following statements of the law have been made:

"Municipal corporations, notwithstanding their broad and comprehensive powers, have no right, unless authorized by the legislature, to alienate their streets or devote

them to the uses inconsistent with the rights of the general public and the abutting land owners." 24 Am. & Eng. Enc. Law (1st Ed. ), p. 47, and cases cited.

"Whether the fee of the street or a mere easement is vested in the municipality, it holds it in trust for the public for the ordinary and necessary purposes to which the streets of a city are usually subjected." 27 Am. & Eng. Enc. Law (2d Ed.), p. 149, and cases cited.

"The municipality holds the streets, and power to regulate and control them, in trust for the public, and cannot put them to any use inconsistent with street purposes. * * * Thus cities have no right to use their streets for the erection of municipal buildings or works, and it has been held that placing a stand pipe in a public street, the fee of which was in the municipality, was an unlawful use of the street." 27 Am. & Eng. Enc. Law (2d Ed.), pp. 150, 151, and cases cited.

See, also, *Barrows* v. *City of Sycamore*, 150 Ill. 588 (25 L. R. A. 535); *Davis* v. *City of Appleton*, 109 Wis. 580; *Pettit* v. *Town of Grand Junction*, 119 Iowa, 352; *Mayor, etc., of Savannah* v. *Wilson*, 49 Ga. 476; *Rutherford* v. *Taylor*, 38 Mo. 315; *Glasgow* v. *City of St. Louis*, 87 Mo. 678.

The village had no right to make the use of the street it attempted to do. Since this bill was filed, the village has ignored the effort of complainant to assert her rights, and has completed the building, and we are now urged to affirm the decree of the court below. The action of the village was taken at its peril, and it should not be permitted to profit by its own wrong.

The decree is reversed, and one will be entered here requiring the removal of the electric lighting plant, with costs of both courts.

Grant, Blair, Montgomery, and Hooker, JJ., concurred.